## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | | |
|---|---|---|
| **MICHAEL B. DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 6:14cv42** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Michael B. Davis ("Davis") challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Davis asserts that the ALJ erred by (1) not finding that his post-traumatic stress disorder ("PTSD") met or equaled the listing under 12.06; (2) failing to properly consider the combination of all of his impairments and their impact on his RFC; (3) failing to posit a hypothetical question to the vocational expert ("VE") that adequately reflected all of his impairments; and (4) finding Davis and his wife to be only partially credible. Davis also argues that the Appeals Council erred when it did not remand the case after receipt of additional evidence. I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. No. 17.

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Davis failed to demonstrate that he was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Davis filed for DIB on June 1, 2011, claiming that his disability began on March 2, 2011. R. 177. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 70, 86. On July 8, 2013, ALJ Mary C. Peltzer held a hearing to consider Davis's disability claim. R. 35–69. Davis was represented by an attorney at the hearing, which included testimony from vocational expert Andrew Beall. Id.

On August 6, 2013, the ALJ entered her decision analyzing Davis's claim under the familiar five-step process[3] and denying Davis's claim for benefits. R. 21–31.

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2),.

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or

The ALJ found that Davis suffered from the severe impairments of degenerative disc disease at L5-S1 and PTSD. R. 23. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 24. The ALJ further found that Davis retained the RFC to perform medium work, except that he could have no more than occasional exposure to extreme heat and humidity; could only perform unskilled work with no more than simple, work-related decisions and no work where the pace of productivity is dictated by an external source over which he has no control, such as an assembly line or conveyor belt; could have no contact with the general public; and could only have occasional contact with supervisors and coworkers and no tandem work assignments. R. 26. The ALJ determined that Davis could not return to his relevant past work as a shift supervisor and dye plant supervisor (R. 30), but that Davis could work at jobs that exist in significant numbers in the national economy, such as counter supply worker, detailer, or cleaner. R. 30–31. Thus, the ALJ concluded that Davis was not disabled. R. 31. On September 20, 2014, the Appeals Council denied Davis's request for review (R. 1) and this appeal followed.

## SOCIAL AND VOCATIONAL HISTORY

Davis was born in 1968 and was 42 years old when he applied for disability benefits (R. 175), making him a younger individual. 20 C.F.R. § 404.1563(c). Davis completed some college coursework (R. 41) and lives with his spouse and two children.

---

equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

R. 40–41. His previous work experience includes working as a supervisor at a wastewater

treatment plant and at a dye plant. Davis also served in the military in Guantanamo Bay,

Cuba. R. 267.

**ANALYSIS**

**12.06 Listing**

Davis argues that the ALJ erred in finding that his PTSD did not meet or equal

listing 12.06 for anxiety. Specifically, Davis contends that the ALJ failed to discuss

whether he met the Paragraph A criteria of 12.06 and incorrectly found that he had no

limitations in activities of daily living and only moderate limitations in his social

functioning and ability to maintain concentration, persistence, or pace.

A "listed impairment" is one considered by the Social Security Administration "to

be severe enough to prevent an individual from doing any gainful activity, regardless of

his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "When satisfied,

the listings of impairments automatically result in a finding of disability. The listings are

designed to reflect impairments that, for the most part, 'are permanent or expected to

result in death.'" Casillas v. Astrue, 3:09–CV–00076, 2011 WL 450426, at *4 (W.D. Va.

Feb. 3, 2011) (citing 20 C.F.R. § 404.1525(c)(4)).

To meet or equal a § 12.00 listing for a mental disorder, a claimant must satisfy

criteria under both Paragraph "A" and "B" of the particular listing. Paragraph A delineates

the required medical diagnosis or clinical evidence of a mental impairment. Paragraph B

criteria for each § 12.00 listing requires a showing of at least two functional limitations,

such as (1) marked restriction of activities of daily living, (2) marked difficulties in

maintaining social functioning, (3) marked difficulties in maintaining concentration,

persistence, or pace, or, (4) repeated episodes of decompensation, each of extended

4

duration. 20 C.F.R. Pt. 404, Subpt. P., App'x 1, §§ 12.04B, 12.06B, 12.08B & 12.10B.

The Commissioner defines degrees of limitations under 20 C.F.R. §§ 404.1520a,

416.920a, rating limitations on a five point scale of "none, mild, moderate, marked, and

extreme." A "marked" limitation as required for Paragraph B "may arise when several

activities or functions are impaired, or even when only one is impaired, as long as the

degree of limitation is such as to interfere seriously with your ability to function

independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404,

Subpt. P., App'x 1, § 12.00C.

The ALJ must clearly articulate the reasons for her decision regarding a listed

impairment. Kiernan v. Astrue, 3:12CV459–HEH, 2013 WL 2323125, at *5 (E.D. Va.

May 28, 2013). "[A] conclusory statement that a condition does not constitute the medical

equivalent of a listed impairment is insufficient." Id. (quoting Diaz v. Comm'r of Soc.

Sec., 577 F.3d 500, 504 (3d Cir. 2009)). However, the fact "[t]hat the ALJ did not spell

out every fathomable consideration is not reversible error." Smith v. Astrue, 2:11–CV–32,

2012 WL 1435661, at *6 (N.D. W.Va. Apr. 24, 2012) (citing Bledsoe v. Barnhart, 165

Fed. App'x. 408, 411 (6th Cir. 2006)). A cursory explanation in step three is satisfactory

so long as the decision as a whole demonstrates that the ALJ considered the relevant

evidence of record and there is substantial evidence to support the conclusion. See Smith

v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (accepting a cursory explanation under

these circumstances). Ultimately, the role of this court is to examine the record to

determine if substantial evidence supports the ALJ's conclusion.

Davis argues that the ALJ erred because she made no determination as to which

components of the Paragraph A criteria Davis met and because her findings regarding his

Paragraph B limitations were not supported by substantial evidence.

a.   Paragraph A

Davis argues that the ALJ erred because her listing analysis did not discuss the

Paragraph A criteria for listing 12.06. Paragraph A sets forth the medically documented

symptoms of each mental impairments necessary to meet the listing. Davis is correct that

the ALJ did not discuss in her decision whether she met the Paragraph A criteria in this

case. However, because the ALJ determined that Davis did not meet the requirements of

Paragraph B, any error by the ALJ is harmless. See Nations v. Colvin, No. 1:14cv190-

MOC, 2015 WL 1893655, at *6 (W.D.N.C. Apr. 27, 2015) (quoting Sullivan v. Zebley,

493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing,

it must meet all of the specified medical criteria.  An impairment that manifests only some

of those criteria, no matter how severely, does not qualify.")). Davis could not have been

deemed disabled even if the criteria for Paragraph A were met because he did not meet the

criteria for Paragraph B.

Davis argues that by failing to specifically state which Paragraph A criteria he met

for each listing, the ALJ failed to properly consider the severity of her mental impairments

and their impact on his functioning. However, the ALJ found that Davis's PTSD was a

severe impairment, and thus had more than a minimal impact on his ability to function.

The ALJ analyzed Davis's ability to function under Paragraph B of the listing. Then, after

concluding that Davis's PTSD did not meet a listing, the ALJ then analyzed his mental

impairments in step four of the analysis. The ALJ reviewed Davis's medical records,

reviewed the medical opinions, and reviewed and assessed the relevant testimony. Thus, to

the extent the ALJ committed error by failing to address Paragraph A of the listing, that

error is harmless. See Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (A cursory

explanation at step three is satisfactory so long as the decision as a whole demonstrates

that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion.). Ultimately, the role of this court is to examine the record to determine if substantial evidence supports the ALJ's conclusion. I find, as set forth in more detail below, that the ALJ's decision as a whole demonstrates that she considered the relevant evidence of record and there is substantial evidence to support her conclusion.

b. Paragraph B

The ALJ concluded that Davis had no restrictions in his activities of daily living, "no more than moderate difficulties" in social functioning, "moderate difficulties" in concentration persistence, and pace, and that he had experienced only one to two episodes of decompensation. Therefore, she found that Davis had not met the requirements listed in Paragraph B. Substantial evidence supports these conclusions.

Considering Davis's activities of daily living, the ALJ concluded that he had no restrictions because he was able to do yard work, exercise, go to school events with his son, and independently maintain his personal care. R. 24. Davis argues that these activities were all marred by the presence of his PTSD symptoms, and that he had difficulty controlling his anger while going about his tasks. That may be so. However, Davis does not dispute that he could actually perform these activities and that he could do so without assistance. While Davis may have had some difficulty controlling his impulses, he was ultimately able to do so. The record shows that Davis is capable of preparing a meal for his son, taking care of his personal needs, preparing food for himself, mowing his small yard with a push mower, going outside "often", and driving. R. 234–37. The record indicates that Davis was capable of attending therapy and participating with the group on a regular basis. He also reported during therapy that he was able to attend his wife's family reunion in September 2011. R. 426. In December 2011, Davis reported that he was better

7

at controlling his anger and that his "fuse is longer." R. 980.  In March 2012, Davis

reported that he was able to attend church with his wife, though it was difficult for him to

handle the crowds. R. 977. On February 23, 2012, Psychologist Laura Wagner noted that

Davis "did not meet the Avoidance criteria for PTSD, suggesting that [he] is scoring

below threshold for diagnosis of PTSD at this time." R. 988. Davis has had a long struggle

with PTSD and its accompanying symptoms. However, given the evidence in the record of

what Davis was able to do on a daily basis, I cannot conclude that the ALJ's decision that

he had no restrictions in his activities of daily living lacked substantial evidence to support

it.

The ALJ next concluded that Davis had moderate limitations in his social

functioning abilities because his group therapy treatment notes indicate that he smiled and

joked at appropriate times and was frequently supportive of his fellow group members.

R. 25. The ALJ noted Davis's testimony that he was quick to anger and had trouble

controlling his aggressive impulses, but ultimately concluded that his resulting limitations

were moderate in nature. State agency physicians Julie Jennings, Ph.D., Louis Perrott,

Ph.D., and Brian Strain, M.D., reviewed the medical evidence in Davis's case and reached

similar conclusions. Dr. Jennings concluded that Davis had only mild difficulties in

maintaining social functioning. R. 74. Dr. Perrott found that Davis could do "simple

unskilled work" and specifically addressed his social abilities finding that Davis was

capable of "understanding, recalling, and carrying out simple, routine work tasks with

minimal social demands, over a normal workday/workweek." R. 107. Dr. Strain

concluded that Davis had no communicative or environmental limitations. R. 104. The

evidence also shows that Davis was able to attend group therapy, go out with his son, and

attend his wife's family reunion, all of which support the ALJ's conclusion that he had

only moderate limitations in his ability to function socially. The treatment records indicate that Davis was diligently working to repair his family relationships, and that he was progressing. On February 14, 2012 Davis reported to his group therapy that he and his wife were "very close but they also have their moments." R. 993. On the same day, Davis insightfully stated "[r]espect, communication and understanding when to step back from an argument has been key in our relationship." Id. On February 7, 2012, Davis reported in therapy that as a result of maintaining his sobriety, he had a "closer relationship with his 13 y/o son and he was pleased with that new connection." R. 996. On January 12, 2012, Davis offered encouragement to a fellow veteran in his therapy session who was afraid of relapsing. R. 999. His therapist noted he was "actively engaged and supportive of other group members." Id. On April 17, 2012, the treatment notes indicate Davis was "dealing with things a lot better" and was "supportive of other group members." R. 969. Davis also shared with the group that now, upon becoming frustrated with other people, he made a point to "take a break or just get away so that he does not become emotionally charged." Id. The treatment records are replete with similar observations by Davis's treatment providers. While I have no doubt that crowds and the stressors of social interaction aggravated Davis's PTSD, the record supports a finding that Davis was capable of managing his symptoms and that he was learning and executing strategies for handling his stress levels. Substantial evidence supports the ALJ's conclusion that any resulting social impairments were moderate in nature.

Next, the ALJ concluded that Davis had moderate difficulties in concentration, persistence, and pace. R. 25. She came to this conclusion because Davis's treatment notes indicate that he was making significant improvements in his ability to cope with his PTSD symptoms. Id. This conclusion is also supported by additional evidence in the record.

State agency physician Dr. Jennings concluded that Davis had only mild difficulties in maintaining concentration, persistence, and pace. R. 74. Dr. Perrott also concluded that despite Davis's depression and anxiety, he should be able to "understand and follow simple directions, and perform simple, routine work." R. 108. Dr. Perrott went on to state that Davis's condition had "not affected [his] ability to understand, remember, cooperate with others, or perform normal daily activities." Id. On May 31, 2013, Psychologist Keith Noland noted that Davis's "[a]ttention/concentration appeared normal. Short- and long-term memory appeared intact. Thought process was logical, linear, and goal-directed. Thought process was appropriate to the tasks at hand." R. 1049. The record reveals similar clinical findings in other treatment records. For example, on March 2, 2012, Davis was "[c]ooperative; oriented" though his speech was slightly rapid. R. 981. On June 13, 2012, Davis showed "[n]o evidence of significant cognitive deficiency" and "no evidence of psychosis." R. 946. On July 26, 2012, Dr. Suchet Kaur found that Davis was "[a]wake, [a]lert, and oriented" and that he had normal affect and eye contact and no gross neurological deficits. R. 930. On October 8, 2012, Psychiatrist Gerald Brown noted that Davis liked to read, and could now do so for a longer period of time. R. 902. There is no indication anywhere in Davis's extensive treatment record of more serious difficulties in maintaining concentration, persistence, and pace. The ALJ's conclusion that Davis's limitations were only moderate in nature is supported by substantial evidence.

Finally, the ALJ concluded that Davis suffered only one episode of decompensation when he entered a four-week residential substance abuse treatment program from July to August of 2011. R. 25. A review of the record supports this conclusion and neither Davis nor the Commissioner disputes the number of decompensation episodes.

A reasonable person might accept the above evidence as sufficient to support the conclusions that Davis's activities of daily living, social functioning, and concentration, persistence, and pace were not markedly impaired for purposes of Paragraph B. Accordingly, I must conclude that substantial evidence supports the ALJ's conclusion that Davis did not meet or medically equal the 12.06 listing.

**Combination of Impairments**

Next, Davis argues the ALJ failed to properly consider the combined effect of his degenerative disc disease and the mental limitations caused by his PTSD, thereby resulting in a flawed RFC determination.

The RFC determination represents the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a). To craft an appropriate RFC, the ALJ must consider the combined effect of a claimant's impairments when determining a claimant's ability to work, and "adequately explain his or her evaluation of the combined effects of the impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985)). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [the] claimant unable to engage in substantial gainful activity.... [T]he [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them." Id. at 50.

Here, the ALJ thoroughly reviewed and considered Davis's symptoms and their combined effect on his RFC. The ALJ found that Davis "has a history of degenerative disc disease and post-traumatic stress disorder." R. 26. The ALJ addressed Davis's physical and mental symptoms and their resulting limitations, noting a lumbar x-ray that showed evidence of degenerative disc disease, the use of a TENS unit for pain, social limitations,

11

weather-related triggers of PTSD symptoms, mood swings, substance abuse issues, "achiness" in his back, disruptive dreams, struggles with sobriety, and physical therapy for back pain. R. 26–28. The ALJ thoroughly assessed Davis's impairments and functional capacity despite his physical and psychological symptoms. After considering all of Davis's established limitations, the ALJ determined that Davis should be limited to medium work with no more than occasional exposure to extreme heat and humidity; unskilled work with no more than simple, work-related decisions; no work where the pace of productivity is dictated by an external source over which Davis has no control; no contact with the general public; only occasional contact with supervisors and coworkers; and no tandem work assignments. These restrictions account for the combination of Davis's PTSD symptoms and his back pain. "Medium work" is work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). If the ALJ had not accounted for Davis's physical limitations in crafting the RFC, then a limitation to medium work (work for which the only restriction is physical) would make little sense. The other environmental limitations address Davis's PTSD symptoms. Therefore, I find that substantial evidence supports the ALJ's consideration of Davis's physical and mental impairments in determining the RFC.

**Hypothetical to Vocational Expert**

Davis next submits that it was error for the ALJ to find that he had the severe impairment of degenerative disc disease and then fail to include this impairment in her hypothetical questions to the VE. Davis also argues that the RFC does not adequately account for the ALJ's finding that Davis had moderate limitations in concentration, persistence, and pace. Finally, Davis contends that the ALJ erred when she did not include excessive absenteeism in her hypothetical question to the VE.

12

The purpose of a vocational expert is "to assist the ALJ in determining whether

there is work available in the national economy which this particular claimant can

perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). A vocational expert's

opinion must be given in response to proper hypothetical questions, which fairly set out all

of the claimant's impairments. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)

(quoting Walker, 889 F.2d at 50). The ALJ has "some discretion to craft hypothetical

questions to communicate to the vocational expert what the claimant can and cannot do."

Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006). Hypothetical questions should

adequately reflect the plaintiff's RFC as found by the ALJ and supported by sufficient

evidence. Id.

Here, the ALJ did present a hypothetical question to the VE that adequately

reflected the RFC and all of Davis's impairments. In fact, the hypothetical question

tracked the language of her RFC almost verbatim. The ALJ asked the VE to assume that

the hypothetical individual:

> can perform all functions of medium work, that they are limited to no more than
> occasional exposure to extreme heat and humidity. They are also limited to
> unskilled work in an SVP of 1 or 2, with no more than simple work-related
> decisions, and no work with a pace or productivity as dictated by an external
> source over which the hypothetical individual has no control, such as assembly
> lines and conveyor belts. There should be no contact with the general public, and
> occasional contact with supervisors and co-workers, with no tandem work
> assignments.

R. 65–66. The restriction to medium work reflects the ALJ's consideration of Davis's

physical limitations caused by his back pain, and the environmental restrictions adequately

account for the symptoms of his PTSD. While the ALJ did not expressly state in the

hypothetical that the limitation to medium work was linked to Davis's degenerative disc

disease, there is no reason to include such a limitation but for Davis's pain and the

resulting physical limitations. This hypothetical question adequately reflects the plaintiff's

RFC as found by the ALJ and is supported by substantial evidence.

Davis also contends that the hypothetical did not adequately account for the

moderate limitations in concentration, persistence, and pace that the ALJ found because

the RFC and the hypothetical do not address such a limitation. However, the ALJ's

hypothetical and RFC do adequately account for Davis's limitations in concentration,

persistence, and pace. The ALJ not only limited Davis to simple work instructions and

unskilled work, but she also precluded employment in work where the pace or

productivity levels would be dictated by an external source that Davis could not control.

Davis points to no reason why these limitations do not adequately address his moderate

limitations in concentration, persistence, and pace.[4]

Davis also argues that the ALJ failed to include his anticipated absenteeism in her

hypothetical to the VE. However, Davis points to no evidence in the record to show that

he would likely miss a significant amount of work. Instead, the record indicates that Davis

is generally capable of getting himself to his appointments on a timely and consistent

basis. Davis's contention that he would be excessively tardy or absent from work has no

objective support in the record and is purely speculative. Nothing in the record would have

---

[4] In Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Id. (quoting Winschel v. Commr of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). However, Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. In this case, there is no colorable Mascio issue for two reasons. First, the ALJ did not conclude that Davis's moderate limitations in concentration, persistence, and pace had no effect on his ability to work. Second, the ALJ in this case did not simply limit Davis to simple, routine work based on his limitations in concentration, persistence, and pace without additional explanation. Davis was limited to simple work with additional, specific restrictions to account for his PTSD symptoms and limitations in concentration, persistence, and pace. It is abundantly clear that the ALJ fulfilled her responsibility to adequately review the record and explain her decision for the limitations she did include in the RFC.

required the ALJ to include excessive absenteeism in her hypothetical question to the VE. Her failure to do so was not error.

**Evidence Submitted to the Appeals Council**

Davis also argues that the Appeals Council erred when it did not remand his claim to the ALJ for further consideration following his submission of a medical source statement from his treating psychologist, Keith Noland, Ph.D. Davis contends that this statement was new, material evidence that should have been considered by the ALJ.

The Appeals Council considered this additional statement and found that it did not provide a reason to review the ALJ's decision. R 1. When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y., Dep't. of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id. When the Appeals Council denied Davis's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this Court must "review the record as a whole, including the new evidence, to determine whether substantial evidence supports the [Commissioner's] findings. Wilkins, 953 F.2d at 96. "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp.2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain

15

from making credibility determinations and resolving factual conflicts. <u>Davis</u>, 392 F. Supp.2d at 751.

Here, the Appeals Council considered records from the Salem, Virginia VAMC hospital ("VAMC Records") and a medical source statement from Dr. Noland, dated September 27, 2013 ("Medical Source Statement"). R. 4.

a. <u>VAMC Records</u>

The VAMC records are "new" because they are neither duplicative nor cumulative. The records reflect Davis's continued participation in VAMC group therapy sessions from June 14, 2013 through December 18, 2013, a period of time not included in the original record. These records are not material because there is no reasonable probability that they would have changed the outcome of the ALJ's decisions. The records are similar to the treatment records the ALJ had considered and do not reflect new treatment or a worsening of Davis's condition. The records indicate Davis continued to receive group therapy services, and that he continued to have "good week[s]." <u>See</u>, <u>e.g.</u>, R. 1103, 1105, 1107, 1114, 1126, 1131, 1149, 1185, 1198, 1203. Davis continued to support his peers in group settings and appropriately engaged in the group "as usual." R. 1105. While Davis did report some difficulties (R. 1111), he also continued to show insight into his mental status and his progress. <u>Id.</u> In November 2013, Davis reported that he was "pleased with all improvements" and that he was "confident" that he could handle any setbacks. R. 1135. In October 2013, Davis reported that he was able to manage his back pain with Naproxen. R. 1159. A review of these records indicates Davis continued to attend group therapy and continued to improve. There is nothing in the records, either before or after the hearing date, that conflicts with or significantly adds to the treatment records considered by the ALJ. Therefore, I find that there is no reasonable probability that these additional records

would have changed the ALJ's decision. The records are not material and the Appeals Council did not err in its refusal to review the case further.

b. Medical Source Statement

Dr. Noland's report is "new" because it is not duplicative or cumulative. However, it is not material because there is no reasonable probability that it would have changed the outcome of the hearing. It also does not relate to the period of time prior to the ALJ's decision.

Dr. Noland's statement is a "check-the-box" style form in which he gives his opinions regarding Davis's various abilities. Dr. Noland concludes that Davis has some "moderate impairment in functioning" and that his PTSD does limit him in some areas. R. 1262, 1264. Dr. Noland only rated Davis as "unable to meet competitive standards" in two categories: maintaining attention for a two-hour segment and completing a normal workweek without interruptions from his symptoms. R. 1264. Dr. Noland did not conclude that he was precluded from all employment. Instead, Dr. Noland wrote "a 40-hr/week job is a realistic goal with continued treatment, but it is more likely that he would succeed if a gradual approach were used (e.g., start with 20 hrs/week for 6 months, etc.)." Dr. Noland's review of Davis's symptoms and their effect on his ability to work sheds no new light on Davis's symptoms or his limitations. The conclusions in Dr. Noland's statement are similar to those reached by the ALJ, and there is little chance that this report would have changed the ALJ's decision.

The statement also fails to relate to the time period prior to Davis's hearing. Dr. Noland's signed the statement on September 27, 2013. The hearing took place on August 5, 2013. The report indicates that Dr. Noland began seeing Davis in May of 2013, a date prior to the hearing. The statement only evaluates Davis at the time of Dr. Noland's

evaluation and does not expressly relate back to the time period before the hearing. Therefore, the Appeals Council did not err when it denied Davis's request for additional review.

**Credibility**

Finally, Davis claims the ALJ erred when she failed to find him and his wife fully credible regarding the extent of his mental limitations. Davis argues that the ALJ erred when she concluded that his alleged mental limitations were unsupported by the medical evidence because the ALJ failed to consider that Davis's active participation in group therapy was the result of a controlled environment of small groups of people, very unlike a setting in the general public. Additionally, Davis argues that he had a long history of mental health treatment to support his claim that his PTSD prevented him from being a fully functioning member of society.

It is for the ALJ to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Davis's subjective allegations of pain and mental limitations are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Davis met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F .3d 585, 592–93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Davis's ability to work. Id. at 594–95. Here, the ALJ thoroughly identified the evidence forming the basis of her credibility determination and explained her reasons for finding Davis's statements about the intensity, persistence, and limiting effects of his symptoms to be less than fully credible.

The ALJ determined that Davis's medically determinable impairments could reasonably be expected to cause his alleged symptoms. R. 28. However, The ALJ concluded that Davis was not entirely credible because his treatment records indicated "routine and conservative" treatment. R. 28. The ALJ noted that Davis had never undergone surgery for his back pain, and that physical therapy and use of a TENS unit had effectively decreased his pain. Id. As for his PTSD, the ALJ concluded that the therapy notes in Davis's record indicated he was "doing well" and was maintaining sobriety. Id. The ALJ also reviewed the treatment records and determined that when Davis was compliant with his therapy and medication regimen, his symptoms decreased and he felt better. R. 28–29. The ALJ analyzed Davis's credibility and considered a pain questionnaire in which Davis reported no pain (R. 232), a function report where he reported no difficulty with lifting, squatting, or bending, (R. 239), and his hearing testimony in which Davis reported that he completes his physical therapy exercises at home, though he cannot do any heavy living and sometimes has difficulty picking up items from the floor. R. 49.

The ALJ considered the opinion evidence in the record to support her credibility determination. R. 29. The ALJ gave the greatest weight to the state agency doctors who evaluated Davis's record. These doctors ultimately concluded that Davis was not disabled, and that his mental and physical limitations were primarily mild in nature. R. 74, 76, 82, 92, 94–95. After thoroughly comparing Davis's complaints to the objective medical evidence in the record, the ALJ concluded that her RFC was "supported by the lack of significantly adverse objective findings, [Davis's] improvement with treatment, and the essentially routine and conservative nature of the treatment he received." R. 29. The ALJ thoroughly explained the reasoning behind her credibility determination, and substantial

evidence supports her conclusions on this point.

Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala. No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). It is part of the ALJ's prerogative as a fact finder to consider the evidence as a whole in determining a claimant's credibility. Where, as here, the ALJ's credibility determination is supported by substantial evidence, it should not be disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658–59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589). Accordingly, I decline to do so here.

### CONCLUSION

For the foregoing reasons, I find that substantial evidence supports the Commissioner's decision. Accordingly, I **GRANT** summary judgment to the defendant and **DISMISS** this case from the court's docket.

Entered:  March 16, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge